UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| DAVID Y. MORAN, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SANFORD C. BERNSTEIN & CO., LLC )<br>And ALLIANCEBERNSTEIN, L.P. )<br>(f/k/a ALLIANCE CAPITAL )<br>MANAGEMENT L.P.), )<br>)<br>    Defendants. ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff David Y. Moran, by his attorneys, Jackson Lewis LLP and Schindler Cohen & Hochman LLP, alleges as his Complaint against defendants Sanford C. Bernstein & Co., LLC and AllianceBernstein, L.P. (collectively, "AllianceBernstein") as follows, based upon the personal knowledge and the acts of plaintiff and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.  This case arises from a dispute between Moran and AllianceBernstein over Moran's right to pursue his livelihood as a financial advisor when he joins his new employer, UBS Financial Services, Inc. ("UBS"), on August 15, 2011.

2.  Moran is a financial advisor who has lived and worked in Atlanta, Georgia since 2005. On June 10, 2011, he resigned from AllianceBernstein to join

UBS in Atlanta. Moran and AllianceBernstein signed an employment agreement in 2005 (the "Employment Agreement") which contains several restrictive covenants that are plainly unenforceable under Georgia law.

3. The Employment Agreement specifies that disputes related to Moran's employment with AllianceBernstein be arbitrated before FINRA. On June 23, 2011, Moran commenced an arbitration before FINRA – *David Y. Moran v. Sanford C. Bernstein & Co., LLC and Alliance Capital Management L.P.*, FINRA Dispute Resolution No. 11-02497 (the "Arbitration") – seeking a declaratory judgment that the restrictive covenant provisions in the Employment Agreement are unenforceable under Georgia law.

4. By this action, Moran seeks preliminary injunctive relief while the Arbitration is pending. Moran seeks an order: (1) compelling defendants to resolve any dispute related to Moran's employment through the Arbitration, as set forth in the Employment Agreement; and (2) prohibiting AllianceBernstein from seeking to enforce the restrictive covenants in the Employment Agreement in a manner that would restrict Moran's work activities in Georgia, including but not limited to any activities attendant to his occupation as a financial advisor.

5. Moran will be irreparably harmed if AllianceBernstein is able to enforce the restrictive covenants. He will lose access to his clients; at the same time, AllianceBernstein will be soliciting them, while he cannot. This would be

significantly inequitable and injurious as Moran has already been forced by a New York court to abide by a restrictive 60-day notice provision in separate incentive stock agreements (the "ICAP Agreements") – a provision which would not have been enforceable under Georgia law.  To allow AllianceBernstein to enforce a further period during which Moran cannot solicit business, freely service his hard-won client base, or compete for the loyalty of those clients, would do further irreparable harm to Moran and his ability to pursue his livelihood – even if such restrictions were imposed only until the FINRA panel in the Arbitration is able to render a decision on whether the restrictive covenants in the Employment Agreement are unenforceable.

6. If this Court grants the requested preliminary injunctive relief, Moran will advise FINRA of the relief, which will then be required, per Rule 13804 of the FINRA Code of Arbitration Procedure, to schedule an arbitration hearing on permanent relief commencing within 15 days of the Court's order.

## **PARTIES**

7. Moran is a registered representative who has worked and lived in Atlanta, Georgia since 2005.  During the relevant period, Moran worked for AllianceBernstein in its Atlanta, Georgia office.

8. Defendant AllianceBernstein, L.P. (f/k/a Alliance Capital Management, L.P.) is, on information and belief, a Delaware limited partnership with its principal place of business in New York, New York.

9. Defendant Sanford Bernstein & Co., LLC is, on information and belief, a subsidiary of AllianceBernstein and is a member of FINRA. It is a Delaware limited liability company with its principal place of business in New York, New York, and it maintains an office in Atlanta, Georgia.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the matter in controversy exceeds $75,000.

11. Pursuant to 28 U.S.C. § 1391(a), venue is properly laid in the United States District Court for the Northern District of Georgia.

12. This court has jurisdiction over the defendants by virtue of the fact that they are registered to do business in the state of Georgia and maintain offices in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

**A.   Background**

13. In approximately January 2005, AllianceBernstein promoted Moran to Financial Advisor and transferred him from Florida to Georgia to help build and

open AllianceBernstein's Atlanta office. In April 2005, Moran moved to Atlanta and became a resident of the state of Georgia. Through his efforts since January 2005, he built a largely Georgia-based clientele with approximately $200 million in assets under management, which generated nearly $2 million in revenue in the twelve months prior to his resignation from AllianceBernstein. Moran earned approximately $235,000 in 2010.

14. The vast bulk of the client assets under Moran's management at AllianceBernstein belonged to Georgia residents, businesses, or entities. He regularly met and communicated with these clients in Georgia and otherwise conducted business in Georgia with them. He never worked for AllianceBernstein in New York.

15. Moran owns a home in Atlanta, where he lives with his wife and children. He is active in the Atlanta community and holds positions with various local charity boards and civic organizations.

16. Moran resigned from AllianceBernstein on June 10, 2011, and took a position with UBS in Atlanta. Having devoted six and a half years to building a book of business in Georgia, Moran sought to begin the next stage of his career at UBS, where he believes his and his clients' interests will be better served. AllianceBernstein, however, has indicated that it will seek to restrict Moran's

ability to freely pursue his livelihood to the fullest extent permitted under the terms of the Employment Agreement.

17. On June 10, 2011, AllianceBernstein's internal counsel sent Moran a letter, which among other things, attached a copy of the Employment Agreement and stated that "we reserve the right to enforce our contract, trade secret, and other legal rights. Those rights have been enforced by courts and arbitration panels in strongly similar circumstances."

18. On June 14, 2011, AllianceBernstein sought and received an order from the New York State Supreme Court temporarily restraining Moran from violating a 60-day notice provision contained in the ICAP Agreements that Moran had signed in 2009 and 2010 with AllianceBernstein.[1]  Since that time, Moran has been an AllianceBernstein employee but has not been permitted into the AllianceBernstein offices and has not been allowed to access AllianceBernstein's systems.

19. Moran's obligations under the notice provision of the ICAP Agreements and the New York State court's order end on August 14, 2011. Thereafter, he will join UBS.

---

[1] The ICAP Agreements contained a clause that conferred exclusive jurisdiction for disputes arising out of the ICAP Agreements in the state and federal courts of New York County.  The Employment Agreement does not contain this clause.

20. On information and belief, AllianceBernstein has sought to enforce restrictive covenants in New York State courts against former employees who work and reside in other states.

21. Based on the foregoing allegations, Moran believes AllianceBernstein will take measures to enforce the multiple onerous restrictive covenants set forth in the Employment Agreement against him.

**B.  The Enforceability Of The Restrictive Covenants In The Employment Agreement Should Be Determined Through The FINRA Arbitration**

22. As a registered representative with Sanford C. Bernstein & Co., LLC, Moran executed a Form U-4, which requires arbitration in FINRA of all disputes between Moran and Sanford C. Bernstein & Co., LLC arising out of his employment with the firm.

23. The Employment Agreement provides for arbitration before FINRA of any disputes related to his employment with AllianceBernstein:

> Notwithstanding any agreement relating to arbitration that you may sign in a Form U-4 during your employment with us, whether prior or subsequent to this Agreement, any controversy between you and us arising out of any matter relating to this Agreement or breach thereof, or your employment by us, shall be settled by arbitration, in accordance with the rules of National Association of Securities Dealers, Inc. ("NASD") as may be amended from time to time, and the award of the arbitrators shall be final and judgment upon such award may be entered in any court, state or federal, having jurisdiction.

24. Pursuant to these provisions, Moran initiated the Arbitration with FINRA.

25. The defendants have been served with Moran's Statement of Claim in the FINRA Arbitration. By letter dated July 5, 2011, FINRA designated Atlanta, Georgia as the venue for the Arbitration. The defendants' answer to the Statement of Claim is due on August 24, 2011.

### C. The Restrictive Covenants In The Employment Agreement Are Void And Unenforceable Under Georgia Law

26. The Employment Agreement contains overly-broad restrictions relating to confidentiality and non-solicitation.

27. Specifically, Section 4 of the Employment Agreement purports to prohibit Moran, for the two years following his resignation, from soliciting "any client or prospective client of [AllianceBernstein] to whom [Moran] provided services or whom [Moran] contacted for the purpose of developing business for [AllianceBernstein] or whose name became known to [Moran] while [Moran] were in [AllianceBernstein's] employ…." The purported two-year non-solicitation clause in the Employment Agreement (§ 4) is void and unenforceable under applicable Georgia law because it (i) prohibits solicitation of AllianceBernstein clients or prospective clients "whose name become known" to Moran at Alliance Bernstein; (ii) prohibits the mere acceptance of business from any client or

prospective client; (iii) lacks any territorial or geographic limitation; (iv) contains a two-year time period that is too long under Georgia law.

28. Section 3 of the Employment Agreement purports to require Moran to maintain broad categories of information as confidential and to do so indefinitely. The confidential information covenant in the Employment Agreement (§ 3) does not contain a time limitation on the restriction of use of confidential information. By their written terms, the confidential information clauses purport to protect more than simply trade secret information, and they purport to do so in perpetuity. This renders the covenant invalid and unenforceable.

29. AllianceBernstein has prohibited Moran from going to the office, accessing his accounts, or servicing his clients during the 60-day notice period. Not only can he not earn his livelihood, but Moran's clients, with whom he has worked for years, and who have placed their trust in him, have been obstructed from doing business with Moran by AllianceBernstein's enforcement of overly restrictive notice and non-solicitation covenants.

30. Continued restrictions on Moran's ability to service his clients at UBS, even for the period of the pendency of the Arbitration, would be unfair and inequitable to Moran and his clients.

31. If AllianceBernstein is able to enforce the restrictive covenants of the Employment Agreement - especially in the critical period immediately after Moran

joins UBS and while the Arbitration is pending – he will lose the opportunity to access his clients. He has already been unable to work with them during the period that the 60-day notice provision has been enforced. His clients will be disadvantaged by not being able to work with their chosen financial advisor.

32. Moran has no adequate remedy at law.

## CLAIM FOR DECLARATORY/INJUNCTIVE RELIEF IN AID OF ARBITRATION

33. Moran repeats and re-alleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34. Georgia law should govern the 2005 Employment Agreement. Moran is a Georgia citizen, who lives and works in Georgia, and who serves a predominantly Georgia-based clientele. Moran is entitled to the rights and protections afforded to citizens of Georgia under Georgia law.

35. The State of Georgia has a strong interest in this dispute that far outstrips the interest of any other state. Moran's employment agreement was entered into in 2005 and thus is governed by the Georgia law of restrictive covenants as it existed prior to the November 2010 ratification of the amendment to the Constitution of Georgia adopting OCGA sec. 13-8-2.1 into law.

36. Georgia's strongly, and oft-repeated, public policy favors mobility of employees, and that public policy is reflected in its body of law addressing restrictive covenants such as those set forth in the Employment Agreement.

37.     The FINRA arbitration panel in Atlanta should apply Georgia law to determine the enforceability of the restrictive covenants.  The FINRA Arbitration panel, applying Georgia law, is likely to determine that the restrictive covenants in the 2005 Employment Agreement are unenforceable and must be struck.  Specifically, the confidentiality provision (§ 3), the non-solicitation provision (§ 4) and the provision on remedies for breach of sections 3 and 4 (§ 5) each offend Georgia's strong public policy against overbroad restrictive covenants that restrict the mobility of Georgia employees as well as their ability to pursue their livelihood.

38.     Moreover, the Georgia laws that arise under that public policy require that all restrictive covenants be completely struck if any of them are unenforceable because they are overbroad or are not otherwise reasonable in terms of duration, territorial coverage, and scope of activity.  Sections 3, 4, and 5 of the Employment Agreement are overbroad and otherwise not reasonable under Georgia law.

39.     Moran faces a substantial threat of irreparable injury if the requested relief is not granted.

40.     The threatened injury to Moran outweighs the potential damage to AllianceBernstein.

41.     The requested relief would serve the public interest.

**WHEREFORE**, Moran requests relief as follows:

11

a. An injunction compelling AllianceBernstein to resolve any dispute related to Moran's employment through the Arbitration, as provided for in the Employment Agreement;

b. An injunction prohibiting AllianceBernstein from seeking to enforce the restrictive covenants in the Employment Agreement in a manner that would restrict Moran's work activities in Georgia, including but not limited to any activities attendant to his occupation as a financial advisor pending the outcome of the Arbitration.

c. The costs of this proceeding, including attorneys fees;

d. Any equitable or injunctive relief that is necessary and proper; and

e. Such other and further relief as is just and proper.

Moran certifies that this pleading complies with Local Rule 5.1.

        JACKSON LEWIS LLP

        By: s/ C. Todd Van Dyke
        C. Todd Van Dyke
        Georgia Bar No. 723420
        1155 Peachtree Street N.E.
        Suite 1010
        Atlanta, Georgia 30309
        (404) 586-1814
        Vandyket@jacksonlewis.com
        Attorneys for Plaintiff David Y. Moran

Dated:    Atlanta, Georgia
           August 5, 2011

**Of Counsel:**

Andrew J. Melnick
Daniel E. Shaw
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York  10005
(212) 277-6300 (tel)
(212) 277-6333 (fax)
amelnick@schlaw.com
dshaw@schlaw.com

4812-4326-0682, v.  1