## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| DAVID Y. MORAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| SANFORD C. BERNSTEIN & CO., LLC | ) | |
| And ALLIANCEBERNSTEIN, L.P. | ) | |
| (f/k/a ALLIANCE CAPITAL | ) | |
| MANAGEMENT L.P.), | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF IN AID OF ARBITRATION WITH INCORPORATED MEMORANDUM OF LAW

JACKSON LEWIS LLP
C. Todd Van Dyke
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, Georgia 30309
(404) 525-8200 (tel)
(404) 525-1173 (fax)
vandyket@jacksonlewis.com

Of counsel:
Andrew J. Melnick
Daniel E. Shaw
SCHINDLER COHEN & HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300 (tel)
(212) 277-6333 (fax)
amelnick@schlaw.com
dshaw@schlaw.com
*Attorneys for Plaintiff David Y. Moran*

# **TABLE OF CONTENTS**

NATURE OF THE CASE .......................................................................1

FACTS .................................................................................................3

MEMORANDUM OF LAW ..................................................................7

I.   Legal Standard ..............................................................................7

II.  There Is A Substantial Likelihood That Moran Will Succeed
     On The Merits ...............................................................................8

     A.   Georgia Law Must Be Applied ...............................................8

     B.   The Restrictive Covenants Are Unenforceable Under Georgia
          Law And Public Policy ........................................................11

          1.   The Two-Year Non-Solicitation Clause Is Void And
               Unenforceable .............................................................12

          2.   The Employment Agreement's Confidentiality Provision
               Is Overbroad And Unenforceable ..................................15

III. Moran Faces A Substantial Threat Of Irreparable Injury If The
     Injunction Is Not Granted ............................................................16

IV.  The Requested Injunction Would Advance The Public Interest ......18

V.   AllianceBernstein Should Be Required To Arbitrate Before FINRA
     In Georgia Rather Than In An Action Before A Different Court Or
     Arbitral Body ..............................................................................20

CONCLUSION ..................................................................................21

Plaintiff David Y. Moran, through his attorneys, Jackson Lewis LLP and Schindler Cohen & Hochman LLP, states as follows in support of his motion for a temporary restraining order and a preliminary injunction:

## NATURE OF THE CASE

Moran is a financial advisor who has lived and worked in Atlanta, Georgia since 2005.  On June 10, 2011, Moran resigned from AllianceBernstein, L.P. ("AllianceBernstein") to join UBS Financial Services, Inc. ("UBS") in Atlanta. Moran and AllianceBernstein signed an employment agreement in 2005 (the "Employment Agreement") which contains several restrictive covenants that are plainly unenforceable under Georgia law.  The Employment Agreement specifies that disputes related to Moran's employment with AllianceBernstein be arbitrated before FINRA.  On June 23, 2011, Moran commenced an arbitration before FINRA – *David Y. Moran v. Sanford C. Bernstein & Co., LLC and Alliance Capital Management L.P.*, FINRA Dispute Resolution No. 11-02497 (the "Arbitration") – seeking a declaratory judgment that the restrictive covenant provisions in the Employment Agreement are unenforceable under Georgia law.

Before a final award is rendered in the Arbitration, there is a substantial threat that AllianceBernstein will take steps to enforce the restrictive covenants. AllianceBernstein warned Moran in a June 10, 2011 letter from counsel that it will seek to enforce the restrictive covenants of the Employment Agreement and thus

restrict Moran's ability to freely pursue his livelihood.   On June 14, 2011 AllianceBernstein sought and received an order from the New York State Supreme Court in *AllianceBernstein, L.P. v. David Y. Moran*, Index No. 651625/2011 (Fried, J.) (the "New York Action") temporarily restraining  Moran from violating a 60-day notice provision contained in separate incentive stock award agreements he entered into with AllianceBernstein in 2009 and 2010, but that same court refused to enforce the non-solicitation provision in those agreements.  The 60-day notice provision that was the subject of the New York Action expires on August 14, 2011, and Moran will thereafter join UBS.

Moran will be irreparably harmed if AllianceBernstein is able to enforce the restrictive covenants and restrict his business activities in Georgia.  He will lose access to his clients; at the same time, AllianceBernstein will be soliciting them.  *See Poe & Brown of Ga., Inc. v. Gill*, 268 Ga. 749, 750, 492 S.E.2d 864 (1997) (loss of customers constituted irreparable harm because part of the value of customers was longevity).

For the reasons set forth above, Moran now seeks preliminary injunctive relief from this court while the Arbitration is pending.  Moran seeks an order: (1) compelling AllianceBernstein to resolve any dispute related to Moran's employment through the Arbitration in Atlanta, as provided in the Employment Agreement; and (2) prohibiting AllianceBernstein from seeking to enforce the

2

restrictive covenants in the Employment Agreement in a manner that would restrict Moran's work activities in Georgia, including but not limited to any activities attendant to his occupation as a financial advisor during the pendency of the Arbitration.

If this Court grants the requested preliminary injunctive relief, Moran will so advise FINRA, which, pursuant to FINRA Rule 13804, is required to commence an arbitration hearing on permanent and final relief within 15 days of the Court's order.  Pursuant to FINRA's rules, the arbitration panel has the authority to decide whether to extend or dissolve the preliminary injunctive relief issued by the Court.

Moran provides the following facts and memorandum of law in support of his motion:

## FACTS[1]

In approximately January 2005, AllianceBernstein promoted Moran to Financial Advisor and transferred him from Florida to Georgia to help build and open AllianceBernstein's Atlanta office.   In April 2005, Moran moved to Atlanta and became a resident of the state of Georgia. Through his efforts since January 2005, he built a largely Georgia-based clientele with approximately $200 million

---

[1]      The facts in this section are supported by the Declaration of David Y. Moran ("Moran Decl."), which is attached at Appendix "1."   Additional facts in this section are supported by the Declaration of C. Todd Van Dyke ("Van Dyke Decl."), which is attached at Appendix "2."

in assets under management, which generated nearly $2 million in revenue in the twelve months prior to his resignation from AllianceBernstein.   He earned approximately $235,000 in 2010.

The vast bulk of Moran's client assets under management at AllianceBernstein belonged to Georgia residents, businesses, or entities.   He regularly met and communicated with these clients in Georgia and otherwise conducted business in Georgia with them.   Moran has never worked for AllianceBernstein in New York.

The terms of Moran's employment with AllianceBernstein are set forth in the 2005 Employment Agreement.   (Van Dyke Decl., Ex. A.)   The Employment Agreement contains an arbitration provision, which requires that "any controversy between you and [AllianceBernstein] arising out of any matter relating to this Agreement or breach thereof, of your employment by us, shall be settled by arbitration, in accordance with the rules of the National Association of Securities Dealers, Inc...." (*Id.* § 9.)   The Employment Agreement further provides that Moran's employment with AllianceBernstein "is 'at-will' and can be terminated by either of us at any time, with or without cause." (*Id.* §6.)

Moran resigned from AllianceBernstein on June 10, 2011, and took a position with UBS in Atlanta.   Having devoted six and a half years to building a book of business in Georgia, Moran sought to begin the next stage of his career at

4

UBS, where he believes his and his clients' interests will be better served. AllianceBernstein, however, has indicated that it will take steps to enforce restrictive covenants that restrict Moran's ability to freely pursue his livelihood to the fullest extent permitted under the terms of the Employment Agreement. (VanDyke Decl., Ex. F.)  On June 14, 2011, the New York State Supreme Court temporarily restrained Moran from violating a 60-day notice provision contained in separate incentive stock award agreements.[2]

The Employment Agreement provides for overly broad restrictions relating to confidentiality and non-solicitation.  The non-disclosure covenant, which is Section 3 of the Employment Agreement, does not contain a time limit (VanDyke Decl. Ex. A §3.)  The customer non-solicitation covenant, which is Section 4 of the Employment Agreement, purports to prohibit Moran, for the **two years** following his resignation, from "directly or indirectly solicit[ing] any client or prospective client of [AllianceBernstein] to whom you provided services or whom you contacted for the purpose of developing business for [AllianceBernstein] or whose name became known to you while you were in [AllianceBernstein's] employ." (*Id.*

---

[2]     AllianceBernstein has recently sought to enforce restrictive covenants in New York courts against other financial advisors who resigned, including those who do not reside or work in New York. *See, e.g.*, *AllianceBernstein v. Clements*, Supreme Court of the State of New York – New York County, Index No. 100905/11 (May 24, 2011 Order enjoining California employee from soliciting clients).

§4(c).)  It further prohibits any contact or communication "in any manner with clients or prospective clients… regardless of who initiates the contact."  (*Id.* § 4(d)).  It also lacks any territorial restriction.

The connections of this case to Georgia are robust and plentiful, such that Georgia has a significant interest in the outcome of a dispute involving a Georgia citizen, who lives and works in Georgia, and services Georgia clientele.  The strength of this Georgia nexus is in direct contradiction to the single, anemic connection to New York that AllianceBernstein can rely on – *i.e.*, that AllianceBernstein is a New York-based company.  However, New York simply has no *real* interest – and certainly no interest nearly as great as Georgia's interest – in a dispute between an employer and its Georgia-based employee, who worked in the employer's Georgia office with a largely Georgia-based clientele.

As mentioned above, Moran commenced the Arbitration before FINRA on June 23, 2011. (A copy of the Statement of Claim in the Arbitration is attached to the Van Dyke Decl. as Ex. B.)  FINRA served Moran's Statement of Claim on the named respondents in the Arbitration, of whom Sanford C. Bernstein & Co., LLC is a FINRA member (and is thus obligated to arbitrate this dispute in FINRA), and Alliance Capital Management L.P. (n/k/a AllianceBernstein L.P.) is contractually obligated to arbitrate disputes related to Moran's employment before FINRA.  (*See*

VanDyke Decl., Ex. A.)  By letter dated July 5, 2011, FINRA selected Atlanta, Georgia as the venue for the Arbitration.  (*See* Van Dyke Decl., Ex. C.)

## MEMORANDUM OF LAW

### I.    Legal Standard

The purpose of preliminary injunctive relief is "to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Carvalho v. Credit Suisse Secs. (USA) LLC*, 1:07-CV-2612-RWS, 2007 WL 4054748, at *1 (N.D. Ga. Oct. 31, 2007) (granting former bank employee plaintiff's request for preliminary injunction requiring employment-related disputes to go forward in arbitration) (*quoting United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986)).  To be entitled to a preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the damage to the opposing party; and (4) granting the injunction would not be adverse to the public interest." *Id.*

## II.   There Is A Substantial Likelihood That Moran Will Succeed On The Merits

The restrictive covenants contained in the Employment Agreement are plainly unenforceable under Georgia law and public policy applicable at the time the Employment Agreement was signed in 2005.[3]

### A.   Georgia Law Must Be Applied

Georgia courts have found that Georgia law should be applied, even where, as here, there is a contrary choice-of-law provision in an employment contract, when application of the chosen state's law would enforce a restrictive covenant that offends Georgia's public policy or is prejudicial to Georgia's interests.  "The

---

[3]   Moran's employment agreement was entered into in 2005 and thus is governed by the Georgia law of restrictive covenants as it existed prior to the November 2010 ratification of the amendment to the Constitution of Georgia adopting OCGA § 13-8-2.1 into law.  *See Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc.*, 309 Ga. App. 503, 710 S.E.2d 662, 665 n.1 (2011).  By its terms, OCGA§ 13-8-2.1 is expressly ***not*** retroactive in effect, and Georgia courts have refused to interpret that statute, or the shift in current Georgia public policy which it may reflect, retroactively insofar as it applies to restrictive covenants that were entered into before November 2010.  *See id.*; *Gordon Doc. Prods., Inc. v. Serv. Techs., Inc.*, 308 Ga. App. 445, 448 n.5, 708 S.E.2d 48, n.5 (2011) ("Our analysis in this case is unaffected by any recent legislative proposals or changes.  See O.C.G.A. § 13-8-2.1(a) and applicability date contained in Ga. L. 2009, p. 231 § 4"); *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga.App.28, 30, 706 S.E.2d 660, 663-64 (2011) ("Now effective as a result of the ratification of an amendment to the Constitution of Georgia in the general election of November 2, 2010, OCGA § 13-8-2.1(a) authorizes covenants 'that restrain in a reasonable manner.'  However, Ga. L. 2009, p. 231, § 4 provides that the new version of the statute 'shall not apply in actions determining the enforceability of restrictive covenants entered into before' the ratification.  We therefore apply the law of restrictive covenants as it existed before that event.").

law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interest of, this state." *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 676, 238 S.E.2d 368 (1977).

This rule has been routinely followed by federal and state courts. *See Keener v. Convergys Corp.*, 342 F.3d 1264, 1267-68 (11th Cir. 2003) (disregarding Ohio choice of law clause where the non-competition agreement was contrary to Georgia public policy, holding that the "application of Georgia law is not arbitrary or constitutionally impermissible because Convergys would be attempting to enforce the NCA against Keener, who is living and working in Georgia, where the effects would be felt"); *Nasco*, 239 Ga. at 676, 238 S.E.2d at 369 (though parties had agreed that employment contract was to be construed under Tennessee law, court applied Georgia law because the covenants at issue affected the interests of the state); *see also Hulcher Servs., Inc. v. R.J. Corman R.R. Co.*, 247 Ga. App. 486, 489, 543 S.E.2d 461, 465 (2000) (though employment contract specified Texas law, Georgia had a more significant interest in the litigation and, accordingly, the court declined to follow Texas law as it flagrantly contravened Georgia public policy).

Recently, in *Bunker Hill International, Ltd. v. Nationsbuilder Insurance Services., Inc.*, 309 Ga. App. 503, 710 S.E.2d 662 (2011), the Georgia Court of

9

Appeals held that the non-compete and non-solicitation clauses in an employment agreement had to be struck under Georgia law, even though the agreement itself specified that Illinois law was to apply. *Id.* at 309 Ga. App. 503, 710 S.E.2d at 666. The *Bunker Hill* court recognized that an Illinois court applying Illinois law would likely enforce the restrictive covenants, which – similar to the restrictive covenants at issue here – provided for two-year restrictions without geographic limitations. *Id.* These restrictions were, the court found, repugnant to Georgia's strong public policy, so the court applied Georgia law to declare the restrictive covenants unenforceable, despite the choice-of-law provision in the agreement. *Id.*

As set forth below, the relevant Georgia public policy disfavors restrictive covenants. Georgia's public policy conflicts with the policy suggested in some New York cases.[4] Thus, while AllianceBernstein might argue that the Employment Agreement should be interpreted under New York law, it is clear that arbitrators sitting in Georgia considering the employment-related dispute between Moran and AllianceBernstein should apply Georgia law to this dispute. *See Carvalho,* 2007 WL 4054748, at *2.

---

[4]    For example, contrary to Georgia public policy, New York courts have employed the "blue pencil" doctrine to enforce restrictive covenants to the extent they are reasonable. *See*, *e.g. BDO Seidman v. Hirschberg*, 93 N.Y.2d 382, 394, 690 N.Y.S. 2d 854, 860 (1999) (the New York Court of Appeals has "expressly recognized and applied the judicial power to sever and grant partial enforcement for an overbroad employee restrictive covenant.")

**B.     The Restrictive Covenants Are Unenforceable Under Georgia Law And Public Policy**

Georgia courts will not enforce restrictive covenants in employment contracts unless they are "strictly limited as to time, territorial effect, capacity in which the employee is prohibited from competing, and as to overall reasonableness." *Dent Wizard Int'l Corp. v. Brown*, 272 Ga. App. 553, 555-56, 612 S.E.2d 873, 876 (2005).  Further, the restrictions provided for in a restrictive covenant must be discernable at the time of contracting.  *Koger Properties, Inc. v. Adams-Cates Co.*, 247 Ga. 68, 68, 274 S.E.2d 329, 329 (1981) (covenant unenforceable because territorial restriction of the provision could not be determined until the date of employee's termination).

Georgia does not employ the "blue pencil" doctrine of severability when considering restraints in employment agreements.  *See Palmer & Cay v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1307 (11th Cir. 2005) (affirming ruling by District Court, sitting in diversity, finding that invalid non-solicitation provision rendered entire agreement unenforceable); *Bunker Hill*, 309 Ga. App. 503, 710 S.E.2d at 667 ("Georgia courts do not edit or 'blue-pencil' employment agreements in order to salvage some provisions when others have been found void.").  Accordingly, covenants contained in employment agreements are enforced as written or not at all, and any overbroad restrictive covenant in an employment agreement will render unenforceable all related restrictive covenants contained in that agreement.

11

"Georgia law is clear that if one [non-solicit or non-compete covenant] is unenforceable, then they are all unenforceable." *Advance Tech. Consultants, Inc. v. Roadtrac*, 250 Ga. App. 317, 320, 551 S.E.2d 735, 737 (2001) (invalidating all non-solicit and non-compete covenants in an agreement, on the ground that at least one of them was overbroad and unenforceable). Therefore, an unenforceable non-solicitation provision voids a customer non-competition provision contained in the same agreement. *See Trujillo v. Great Southern Equipment Sales*, LLC, 289 Ga. App. 474, 478, 657 S.E.2d 581, 584 (2008); *Ward v. Process Control Corp.*, 247 Ga. 583, 584, 277 S.E.2d 671, 673 (1981).

### 1.   The Two-Year Non-Solicitation Clause Is Void And Unenforceable

The purported two-year non-solicitation clause in the Employment Agreement (§ 4) is void and unenforceable because it (i) prohibits solicitation of AllianceBernstein clients or prospective clients "whose name became known to" Moran at AllianceBernstein; (ii) prohibits the mere acceptance of business from any client or prospective client of AllianceBernstein; (iii) lacks any territorial or geographic restriction; and (iv) has a time period that is too long.

The Employment Agreement purports to prohibit Moran from soliciting any AllianceBernstein clients or prospective clients "***whose names became known to***" him. Under Georgia law, this covenant is overbroad and unenforceable. Georgia courts have refused to enforce non-solicitation provisions that restrict former

12

employees from soliciting business from all clients of the former employer, regardless of whether the former employee, during the course of his employment, ever had a business relationship with the client.  In *Wolff v. Protege Systems, Inc.,* 234 Ga. App. 251, 506 S.E.2d 429 (1998), the non-solicitation restriction prohibited the former employee from soliciting any customer "on whom the employee called ***or with whom he/she became acquainted*** . . . ."  *Id.* at 253, 506 S.E.2d at 432 (emphasis added).  The Georgia Court of Appeals refused to enforce the non-solicitation restriction.   The Court held:   "As written, the paragraph purports to prohibit Wolff from 'calling on' any of [the former employer's] customers, regardless of whether he had a business relationship with those customers while employed at [the former employer], so long as he 'became acquainted with them while at [the former employer].  This is overbroad."  *Id.* at 253, 506 S.E.2d at 433. (emphasis added).

Other courts have also held that non-solicitation restrictions that are not limited to customers actually serviced by the former employee are unenforceable as a matter of law.  *See Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 377, 297 S.E.2d 473, 475 (1982) (striking down the non-solicitation covenant that prohibited the former employee from soliciting, or accepting business from, any of the former employee's customers on grounds, *inter alia*, it "unfairly restricts ordinary competition")  *Morgan Stanley v. Frisby and Lovell*, 163 F. Supp. 2d

1371, 1378 (N.D. Ga. 2001) (Appendix 3) ("In this case, the restrictive covenant is overbroad because it prohibits Defendants from contacting not only clients that they have serviced, but anyone whose names became known to Defendants during their employment with Plaintiff [without] specify[ing] any particular manner in which such names may have become known to Defendants."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dye*, Civil Action No. 2:02-cv-66-WCO (N.D. Ga. May 24, 2002 (Appendix 4)) ("the non-solicitation clause contained in the employment agreement is overbroad because it seeks to prohibit defendants from contacting not only clients whose accounts they have serviced but also anyone whose names became known to defendants in any office or in any capacity while employed by plaintiff . . . The court is satisfied that the non-solicitation clause is unenforceable in Georgia.").

The non-solicitation clause is also unenforceable because it prohibits a former employee from merely accepting business. In the Employment Agreement, the term "solicit" is defined to include "communicating in any manner" with any AllianceBernstein client or prospective client "to influence or facilitate in any degree" the "transfer" of business "regardless of who initiates the contact." (VanDyke Decl., Ex. A § 4(d)). Georgia courts have long held that non-solicit covenants that prohibit the mere acceptance of business are unenforceable. *Palmer & Cay*, 404 F.3d at 1306 ("The 2002 Agreement contains a provision that prevents

14

Meathe from accepting unsolicited business from former clients of Marsh.  Under *Singer* 297 S.E.2d at 475 and *Waldeck*, 583 S.E.2d at 268, this provision is invalid under Georgia law.").

Furthermore, the non-solicitation clause is void and unenforceable because it lacks any territorial or geographic limitation.  *Trujillo,* 289 Ga. App. at 478, 657 S.E.2d at 584.  It also is unenforceable because the two-year time period is too long under Georgia law.  *See Bunker Hill*, 309 Ga. App. 503, 710 S.E.2d at 666; *Advance Tech. Consultants*, 250 Ga. App. at 322, 551 S.E.2d at 739 (finding two-year prohibition on contacting any of the employer's clients, which also lacked territorial limitations, to be overly broad and unenforceable).

In sum, under Georgia law, the non-solicitation provision in the Employment Agreement is overbroad and, given that blue penciling is forbidden, this provision fails by its own terms.

### 2.     The Employment Agreement's Confidentiality Provision Is Overbroad And Unenforceable

The confidential information covenant in the Employment Agreement (§ 3) does not contain a time limitation on the restriction of use of confidential information.  By their written terms, the confidential information clause purports to protect more than simply trade secret information, and it purports to do so in perpetuity.  This renders the covenant invalid and unenforceable.  *See MacGinnitie,* 420 F.3d at 1242.

15

**III.    Moran Faces A Substantial Threat Of Irreparable Injury If The Injunction Is Not Granted**

AllianceBernstein should be enjoined from seeking to enforce its covenants restricting Moran's business activities in Georgia because the enforcement of the restrictive covenants would cause irreparable harm to Moran.  AllianceBernstein has made clear, by virtue of its June 10, 2011 letter to Moran, the initiation of the New York Action under the separate incentive stock plan agreements, and its litigation in New York against other departed AllianceBernstein advisors, that it intends to try to enforce the restrictive covenants of the Employment Agreement. If the restrictive covenants are enforced, he would lose the opportunity to access and service his customers and the opportunity to compete for his clients' continued loyalty during the pendency of the Arbitration.  This would be significantly inequitable and injurious as Moran has already been forced by the New York court to abide by the restrictive 60-day notice provision in the separate incentive stock agreements – provisions which would not have been enforceable under Georgia law.

To allow AllianceBernstein to enforce a *further* period during which Moran cannot solicit business, service his hard-won client base, or compete for the loyalty of those clients, would do further irreparable harm to Moran and his ability to pursue his livelihood – even if such restriction were imposed only until the FINRA panel in the Arbitration is able to render a decision on whether the restrictive

covenants in the Employment Agreement are unenforceable or not. Moreover, Moran's Georgia clients, with whom he has worked for years, and who have placed their trust in him, are obstructed from doing business with him by AllianceBernstein's enforcement of overly restrictive notice and non-solicitation covenants.

*MacGinnitie v. Hobbs Group LLC*, 420 F.3d 1234 (11th Cir. 2005) is instructive. There, the Eleventh Circuit reversed the district court's denial of MacGinnitie's request for a preliminary injunction against the enforcement of covenants in his employment contract. The restrictive covenant at issue prohibited MacGinnitie from soliciting any person or entity who is a customer of the Hobbs Group, regardless of whether MacGinnitie ever had direct contact with the customer. *Id.* at 1241. The Court held:

> Furthermore, MacGinnitie has shown irreparable harm which cannot be undone through monetary remedies, in the form of unenforceable restrictions on his access to customers, employees, and information. *These injuries are in the form of lost opportunities, which are difficult, if not impossible, to quantify.* Georgia public policy is clear that restrictive covenants in employment contracts are disfavored as potential restraints of trade which tend to lessen competition. *See generally Mouyal*, 262 Ga. At 465, 422 S.E.2d 529; Ga. Const. Art. III, § VI, para. V(c); O.C.G.A. § 13-8-2. Because of this public policy, the Georgia courts and this court have not hesitated to find irreparable harm in cases involving covenants not to compete. *See, e.g.*, Keener v. Convergys Corp., 342 F.3d 1264 (11th Cir. 2003); *Enron Capital & Trade Resources Corp. v. Pokalsky*, 227 Ga. App. 727, 729, 490 S.E.2d

17

136, 138 (1997). (emphasis supplied)

*Id*. (emphasis added).

Moreover, the equities clearly balance in favor of Moran. Further restrictions imposed on him would wreak significantly greater harms on his ability to pursue his livelihood than any purported injury that AllianceBernstein might suffer from the non-enforcement of the covenants in the Employment Agreement. *See id.* at 1243 (finding that balance of harms weighed in employee's favor because he is harmed by restrictive covenants which are against Georgia public policy because of their negative effect on competition). This is especially true as the time until the FINRA panel in the Arbitration decides on the ultimate enforceability of those restrictive covenants is likely quite short – as little as 15 days.

## IV.    The Requested Injunction Would Advance The Public Interest

Finally, granting the requested injunctive relief would serve the public interest. As discussed above, applicable Georgia public policy requires that Moran's freedom of mobility and competition be protected over the anti-competitive restrictions which AllianceBernstein seeks to enforce. Further, Georgia public policy protects the rights of innocent investors, who might otherwise be affected by the restrictions sought against Moran, to maintain relationships with financial advisors in whom they have confidence and to not be

hampered in their investment decisions by employment disputes between firms and employees. *See Carvalho*, 2007 WL 4054748, at *2. Georgia courts recognize the importance of the "public's ability to choose the professional services it prefers." *Singer,* 250 Ga. at 377, 297 S.E.2d at 475. "The public has little interest in having its choice restricted to brokers *other* than the one who has served them, pending the resolution of this dispute." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. de Liniere,* 572 F. Supp. 246, 249 (N.D. Ga. 1983) (emphasis in original). Thus, in *Morgan Stanley Dean Witter, Inc. v. Frisby*, 163 F. Supp. 2d 1371 (N.D. Ga. 2001), the court denied the brokerage firm's application for a preliminary injunction enforcing  restrictive covenants on grounds that such an order would not be in the public interest:

> In a time of market volatility, the inability of a client to consult a trusted advisor for even a single day could result in enormous financial losses to the client…. Issuance of a temporary restraining order in this case is not in the public interest.

*Id.* at 1382.

FINRA has also made it clear that investor choice is of paramount importance. *See* NASD Notice to Members 02-07, January 2002 (Van Dyke Decl., Ex. D) (clarifying that member firms are not permitted to interfere with a "customer's right to transfer his or her account," including by obtaining a court order that "prevent[s] customers from following a registered representative to a

different firm…."); *see also* NASD News Release, dated December 26, 2001 (Van Dyke Decl., Ex. E) ("It is a fundamental right of an investor to choose with whom he or she does business, and the fact that a broker changes firms should not affect an investor's ability to continue to access his or her account and to do business with that broker.")

**V.      AllianceBernstein Should Be Required To Arbitrate Before FINRA In Georgia Rather Than In An Action Before A Different Court Or Arbitral Body**

This Court is authorized to enjoin AllianceBernstein from seeking to enforce invalid restrictive covenants against Georgia citizens.  *See Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297 (11th Cir. 2005) (affirming District Court's issuance of injunction against defendant seeking to enforce invalid restrictive covenants in Georgia through another court).  Moreover, the limited scope of the injunctive relief sought by Moran – i.e., prohibiting any attempt by AllianceBernstein to enforce the restrictive covenants in the Employment Agreement in a manner that would seek to restrict Moran's work activities in Georgia, including but not limited to any activities attendant to his occupation as a financial advisor – is a permissible exercise of this Court's authority.

The parties' agreement to arbitrate before FINRA is enforceable by this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), which authorizes this Court to direct that arbitration proceed in the manner

provided for in the Code of Arbitration Procedure of FINRA, of which Sanford C. Bernstein & Co., LLC is a member, and under whose jurisdiction AllianceBernstein, L.P. (f/k/a Alliance Capital Management, L.P.) has agreed to abide by in section 9 of the Employment Agreement.   Ancillary to its power under the FAA to compel arbitration, this Court has the authority to issue preliminary injunctive relief to preserve the integrity of the FINRA arbitration initiated by Plaintiff by preventing AllianceBernstein from altering the status quo.   This Court is further authorized to grant such injunctive relief pending arbitration pursuant to 28 U.S.C. § 1651, in aid of its jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiff David Y. Moran's request for a temporary restraining order and preliminary injunction should be granted: (1) compelling AllianceBernstein to resolve any dispute related to Moran's employment through the FINRA Arbitration, as provided for the Employment Agreement; (2) prohibiting AllianceBernstein from seeking to enforce the restrictive covenants in the Employment Agreement in a manner that would restrict Moran's work activities in Georgia, including but not limited to any activities attendant to his occupation as a financial advisor.

Moran certifies that this pleading complies with Local Rule 5.1.

Dated:        August 5, 2011

JACKSON LEWIS LLP

By:  *s/ C. Todd Van Dyke*
C. Todd Van Dyke
Georgia Bar No. 723420
1155 Peachtree Street, N.E.
Suite 1000
Atlanta, Georgia 30309
(404) 525-8200 (tel.)
(404) 525-1173 (fax)
vandyket@jacksonlewis.com

Of counsel:

Andrew J. Melnick
Daniel E. Shaw
SCHINDLER COHEN &
HOCHMAN LLP
100 Wall Street, 15th Floor
New York, New York 10005
(212) 277-6300 (tel)
(212) 277-6333 (fax)
amelnick@schlaw.com
dshaw@schlaw.com

*Attorneys for Plaintiff David Y. Moran*

4830-0558-9258, v. 1